## NORRIS and others *v.* HASSLER.

*(Circuit Court, D. New Jersey.* December 5, 1884.)

EQUITY—PLEADING—MULTIFARIOUSNESS—ACCOUNTING BY TRUSTEE—INTERESTS OF CESTUI QUE TRUST ARISING UNDER DISTINCT CONTRACTS.

Where the principal matter in controversy in a case is compelling a trustee to account to his *cestui que trusts* for money and property appertaining to the trust, although the interest of the several complainants may have arisen under distinct contracts, a bill calling upon him in a single action to account respectively to the several complainants for their respective interests in the trust fund will not be considered multifarious, as a multiplicity of suits is thus avoided, and the trustee will be in nowise embarrassed thereby.

On Bill, etc.

*Charles W. Hassler, pro se,* for demurrer.

*P. H. Gilhooly, contra.*

NIXON, J. The defendant has filed a special demurrer to the bill of complaint, and sets forth as the ground of demurrer that the bill is multifarious, inasmuch as it reveals two distinct causes of action,—one, against the defendant as trustee of Northern Pacific Land Trust No. 1, and the other against the defendant as trustee of Northern Pacific Land Trust No. 2,—the complainants not having a common interest in said land trusts. It appears by the bill of complaint that prior to July 1, 1875, the several complainants, together with a number of others, were the owners of certain bonds of the Northern Pacific Railroad Company, amounting in the aggregate to $91,954.55; that they were addressed by the defendant in a circular letter of the above date, representing that other owners of said bonds had placed the same in his hands to be converted into the lands held by said railroad company, and asking them to intrust their bonds to him for the same purpose, and proposing that all the lands acquired by him in exchange for the bonds should be taken in his name, as trustee for the owners; that the purchases and sales should be *pro rata* for all interested, and that a distribution of the profits should be made as frequently as practicable; that, in order to the payment of the preliminary expenses for location, etc., a remittance of five dollars should accompany each $1,000 bond, and other amounts in proportion; that in response to said circular letter the complainants and others sent bonds aggregating the sum of $91,954.55 to the defendant, who returned certificates to said owners severally in the following form, expressing in dollars and cents the value of the bond:

"This certifies that ——— has an interest of ——— dollars and ——— cents in the Northern Pacific Land Trust No. 1, which interest is transferable in person or by attorney on the books of the trustee upon surrender of this certificate.          CHARLES W. HASSLER, Trustee, No. 7 Wall St."

The bill further sets forth the amounts of the railroad bonds held by the complainants respectively, and their value, when delivered to the defendant for the purpose aforesaid; that they were all deliv-

ered between July 1, 1875, and November 10, 1877; that the complainants always supposed, until recently, that all of said bonds received by the defendant were converted into lands for the common advantage of all whom he represented in the exchange; that they have lately been informed that the defendant in fact divided the bondholders into two classes—calling one Northern Pacific Land Trust No. 1, and the other Northern Pacific Land Trust No. 2; that in the first is represented the sum of $66,175.15, and in the other the sum of $25,779.30; that whether said arrangement into classes was for the convenience of the defendant, or whether the bonds of each class were used by him in a common purpose or in distinct enterprises, the complainants are not able to say; but they charge that he has, in truth, made no distinction in the classes, in his use and appropriation of the moneys received and collected on account of the trust. The bill further alleges that the defendant, after receiving the bonds, procured them to be exchanged for lands in the state of Minnesota and in the territory of Dakota; that he has made a large number of sales of portions of said lands, and has received in return cash and mortgages; in his name, as trustee; that he has rendered no account for receipts and disbursements since the year 1877, although often importuned by the complainants so to do, and it prays for an account, for the removal of the defendant as trustee, and for the appointment of a receiver, and for other relief.

A demurrer for multifariousness largely appeals to the discretion of the court. Although there are certain general rules and principles which are applicable, the courts are quite disposed to let each case stand upon its own circumstances, and to sustain or overrule a demurrer as it seems least embarrassing to the parties in the suit, and most conducive to the ends of justice. Multifariousness may be defined generally to be an attempt to embrace in the same suit two or more distinct subjects, whether it be the uniting in one bill of several unconnected matters against a single defendant, or the demand of several matters of an independent nature against several defendants. Story, Eq. Pl. § 271. Doubtless, in the present case, each individual complainant could have maintained a separate suit against the defendant for an account as trustee, but a multiplicity of actions is avoided, and the defendant is in nowise embarrassed by being called upon in a single action to account respectively to the several complainants, and to all others who joined in the suit for their respective interests in the trust fund. Indeed, if the allegation of the bill be true,—and for the purposes of the demurrer it must be accepted as true that the defendant has made no distinction between the classes Nos. 1 and 2, in his use and appropriation of the moneys received and collected on account of the trust,—we do not see how any proper accounting can be had without embracing both trusts in the same suit.

The adjudged cases sustain this view. *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139, has long been regarded as a leading one on this sub-

ject. The bill there was filed by several judgment creditors, claiming by several and distinct judgments, who sought the aid of a court of equity to render their judgments available against alleged fraudulent acts of the judgment debtor, equally affecting them all. The learned chancellor (KENT) held that the bill was not demurrable for multifariousness, as there was a community of interests in the common objects of the suit. "There is no sound reason," he says, "for requiring the judgment creditors to separate in their suits, when they have one common object in view, which, in fact, governs the whole case. There is no particular matter in litigation peculiar to each plaintiff, and if they were obliged to sue separately, it may be pertinently asked, *cui bono?* Their rights are already established, and the subject in dispute may be said to be joint as between the plaintiffs, on the one hand, and the defendants, on the other, charged with a combination to delay, hinder, and defraud their creditors. If each creditor was to be obliged to file his separate bill, it would be bringing the same subject of fraud into repeated discussion, which would exhaust the fund, and be productive of all the mischief and oppression attending a multiplicity of suits. It appears to me, therefore, that the judgment creditors, in cases of fraud in the original debtor, have a right to unite in one bill, to detect and suppress the fraud and to have the debtor's fund distributed according to the priority of their respective liens, or ratably, as the case may be, equally as well as they may now, in ordinary practice, unite in one bill against the legal representatives of the debtor." And in *Gaines* v. *Chew*, 2 How. 642, the supreme court, after quoting with approbation the remark of Lord COTTENHAM in *Campbell* v. *Mackay*, 7 Sim. 564, that "to lay down any rule, applicable universally, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible," proceed to state that "every case must be governed by its own circumstances; and, as those are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. While parties should not be subjected to expense and inconvenience in litigating matters in which they have no interest, multiplicity of suits should be avoided, by uniting in one bill all who have an interest in the principal matter in controversy, though the interests may have arisen under distinct contracts."

"The principal matter in controversy" in the pending case is compelling a trustee to account to his *cestui que trusts* for the moneys and property appertaining to the trust, and, although the interest of the several complainants "may have arisen under distinct contracts," no practical inconvenience can arise, on the accounting, from that fact. The demurrer must be overruled, with costs, and the defendant is allowed 20 days to file his answer.