THE INHABITANTS OF THE TOWNSHIP OF CRANFORD

*v.*

WILLIAM H. WATTERS.

[Submitted December 6th, 1900. Decided February 7th, 1901.
Filed June 4th, 1901.]

Where a statute which provides for a reference by a law court of actions involving complicated accounts to a referee also provides that each party may enter in the minutes of the court a dissent to such reference, and may except to the referee's report, and may require such exceptions to be tried before a jury, it is competent for a court of equity, after such reference, dissent, report, exceptions and demand for trial by jury, to withdraw such action from the law court for determination in a court of equity, provided that the issues arising out of the exceptions are so numerous and so distinct, and the evidence to sustain them so variant, technical and voluminous that a jury is incompetent intelligently to deal with them and come to a just conclusion.

Cranford *v.* Watters.

. Heard on bill, answer and proofs.

The object of the bill is to withdraw from the jurisdiction of the law court and procure the final determination in this court of a cause of action which the defendant, Watters, claims to have against the complainant, the township of Cranford, by reason of the performance by him for the complainant of divers works, being part and parcel of a sewer system installed by the complainant within its territorial limits. The work was mainly done under written contract, which was entered into in the year 1894. There are also claims on the part of Watters (1) for extra work, (2) for the increased cost of work done under the contract by reason of failure of the corporation to perform its part of the contract, and (3) for variations made in the specifications of the work to be done as provided in the contract.

The defendant's claim is that work was done to the amount of about fifty thousand dollars, and that he had been paid twenty-three thousand odd dollars, leaving a balance of about twenty-six thousand dollars due.

To recover that balance he brought an action against the complainant, in the year 1897, in the circuit court of the county of Union. The bill of particulars contained several hundred items. The complainant pleaded to the action, and the court referred it to a referee to hear the cause and state an account between the parties. Both parties dissented from the reference, thereby reserving to themselves the right, under the statute, to a trial by jury.

The cause was tried before the referee, who, by his report, dealt with all the items in the bill of particulars, and, by condensation, reduced the number to eighty-eight, amounting, as claimed by the defendant herein, to $47,491.12, for which he allowed him a total of $34,159.77, disallowing some of the items altogether, and allowing only a portion of others. After crediting him with payments he found a balance due of $11,435.54. After the bill was filed the complainant, by leave of the court, paid $8,000 on account, which the defendant accepted.

To this report each party filed divers exceptions. Watters' exceptions were fourteen in number. The exceptions of the

complainant (the defendant below) were much more numerous, but in the argument they were all considered under nine heads. Some of the exceptions of complainant referred to the same items excepted to by defendant—leaving about twenty disputed matters, disconnected with each other, and depending for their solution upon different evidence and variant considerations.

After these exceptions were taken the complainant filed its bill herein, setting out the facts, and praying for an injunction. It was granted upon the strength of an unreported case of *Shove* v. *Lathrop Co.,* in which Chancellor Runyon granted an injunction under somewhat similar circumstances, but gave no reasons in writing.

The defendant, Watters, answered, but in his answer set up the want of jurisdiction in this court, and claimed the right to a trial by jury.

The cause was brought to hearing upon the evidence (which is voluminous) taken and exhibits made before the referee, and one or two additional exhibits.

*Mr. Frank Bergen,* for the complainant.

*Mr. James Benny,* for the defendant.

PITNEY, V. C.

The serious question in the cause is whether the court ought to take jurisdiction of it. It is urged, *first,* that it is not a cause in which the court ought to have assumed jurisdiction if that jurisdiction had been sought before any action at law had been commenced; and *second,* granting that the court would ever have taken jurisdiction, it is contended that, having permitted the court of law to proceed and deal with the cause to the extent of a reference, it is now too late for the defendant at law to ask this court to withdraw the cause from the jurisdiction of that court.

Dealing with the second ground first, I come to the conclusion that it is not well taken. Supposing it was a proper case for the jurisdiction of this court, under the old practice and before the legislature had invested the court of law with power to refer

Cranford *v.* Watters.

causes of this kind to a referee to hear and determine the same, including the taking and stating of accounts, I think that the vesting of the courts of law with that jurisdiction ought to have the effect of making this court more cautious in assuming jurisdiction in such cases when sought before suit at law is commenced. The primary statement of the case, as presented in a bill in chancery, showing a large number of items and a *prima facie* case for the interference of the court, still leaves it practicable for justice to be done in a court of law under the modern practice of a reference. When the matter has been subjected to the examination of a referee, and he has made his report, it may, and often does, prove that the items actually in dispute are few and easily dealt with by a jury. And I am of the opinion that it is quite proper for this court, in a certain class of cases, to refuse to take jurisdiction until at least an attempt has been made to obtain justice by the machinery of a reference in a court of law. The various powers to compel the production of papers and the examination of the parties now possessed by a court of law gives that court facility for dealing with such cases almost, if not quite, equal to that of the court of chancery. And I think that if the case, as presented by the Watters' bill of particulars of his demand against the township, had been presented to a court of equity, before the suit at law had been commenced, it might well have said (I do not mean to declare that it ought to have said) to the township: "Let Watters bring his suit; *non constat* but that the result of a trial before a referee will be entirely satisfactory to all parties, or reduce the points in dispute to so few in number and such simple dimensions that a jury can deal with it." This view was taken by Vice-Chancellor Reed, in *Bellingham* v. *Palmer, 9 Dick. Ch. Rep. 136.* And were it not for the provision in the Practice act, for the right of each party to dissent from the reference at law and to demand a trial by jury, I should think the remedy at law would be quite equal to that in this court. For if the referee mistook the law, or made a clear error in his deductions of fact, his findings would be open for examination and review by the court. And such I understand to be the English practice, and also that of the State of New York.

Cranford *v.* Watters.

But the defendant, Watters, still demands a trial by jury, and when the parties appear before the jury the only advantage that either party will have from the report will be that it will be *prima facie* evidence of the truth of the referee's findings, and all the items that are excepted to will still be open for examination before the jury; hence the delay in coming to this court does not seem to me to be fatal to the complainant's right.

In the present case Watters, the party who is objecting to the jurisdiction of this court, makes fourteen distinct and separate exceptions to the findings of the referee, and is entitled to have those examined in detail by the jury. To these may be added several of the exceptions taken by the complainant (the defendant below), which are equally separate and distinct, making about twenty different items. And so it seems to me that we come at last to the question whether, with these different items to be examined and determined, the parties can obtain justice in a court of law, or are the items so numerous and difficult, and the evidence which must determine their solution so technical and complicated in its character, as that a jury cannot give it such attention and consideration, with the opportunity afforded them in the consideration of a case in the jury-room, as to enable them to come, with any degree of certainty, to a just conclusion. Or, in other words, if the case is one which if presented to the court upon the exceptions taken by the several parties to the items is such that it would have originally withdrawn it from the jurisdiction of the court of law, it seems to me that it ought to do it even at this late stage of the controversy.

In determining this question I have taken the pains to examine with some care the grounds on which courts of equity proceed in exercising what is called their concurrent jurisdiction with courts of law over matters of this kind. The usual ground stated is that of complicated accounts. But this classification is not confined to those cases of accounting where something more than an account between the immediate parties must be taken, as in the settlement of partnership affairs, trustees' accounts and the like; but it also includes a large class of cases

where the matters of account are between the individual contestants—the plaintiff and defendant.

A consideration of the cases has led me to the conclusion that the true ground of equity jurisdiction in such cases is that the issues necessary to be determined, in order to arrive at a just conclusion, are so numerous and dependent upon such a variety of evidence, or of evidence of such technical character, as that it is substantially impossible for a jury, retiring in the ordinary way to a jury-room and obliged to carry all the oral evidence in their memories, to come, at one session, to anything like a just and proper conclusion. Such a state of affairs produces what is meant by the term "complicated" used in this connection.

The leading case on this subject is *O'Connor* v. *Spaight, 1 Sch. & L. 305*, decided by Lord Redesdale, in Ireland, in 1804. The case is thus stated by the reporter:

"The defendant by indenture bearing date 31st March, 1780, demised certain premises to the plaintiff for three lives, at a rent of 20 shillings per acre for every acre the demised premises should or might contain, under which demise the plaintiff entered into possession; the number of acres was not ascertained, nor did plaintiff appear to have made any regular payments of rent *eo nomine*, nor had defendant given him any receipts in full or for precise gales; but from 1780 down to 1796, the plaintiff had been in the constant habit of accepting defendant's bills, of paying money to his order, of selling him goods on credit, and supplying him and his family with money, the particulars of which several sums were set out in a schedule annexed to the bill, and for which the plaintiff insisted that if credit were given, a balance would appear due to him."

At the end of sixteen years the landlord claimed that a year's rent was due and unpaid, and brought his action of ejectment based on such arrearage. The tenant filed his bill to enjoin the ejectment and for an accounting in the court of chancery. There was nothing in the nature of the accounts to make it difficult for a jury to determine each one of the items claimed; and for a great many of them there must have been vouchers. The number of acres for which rent was to be paid was easily ascertained by a survey. So that there was really nothing in the case which a jury might not have dealt with; and the only ground for holding the jurisdiction was the great number of

Cranford v. Watters.

different items which were to be passed upon. Lord Redesdale, in delivering judgment, used the following language:

"The ground on which I think that this is a proper case for equity is that the account has become so complicated that a court of law would be incompetent to examine it upon a trial at *nisi prius,* with all necessary accuracy, and it could appear only from the result of the account that the rent was not due. This is a principle on which courts of equity constantly act by taking cognizance of matters, which, though cognizable at law, are yet so involved with a complex account that it cannot properly be taken at law, and, until the result of the account, the justice of the case cannot appear."

It is manifest that the words "complex" and "complicated" are here used in the sense I have above stated.

This meagre statement of the rule has been cited with approval in a number of instances by English judges, both in the courts of first instance and in those of appeal. For an instructive explanation of *O'Connor* v. *Spaight,* see *Southeastern Railway Co.* v. *Brogden, 3 McN. & G. 8* (at *p. 24*).

An instructive case, though briefly reported, is *Cooke* v. *Betham, 4 Jur. 957,* decided in 1840 by Lord Cottenham. It was a suit by a client to restrain an action at law brought against him by his solicitor to recover a bill of costs amounting to £18,000. Eight thousand pounds had been paid on account, but not as liquidated payments. Lord Cottenham agreed with the plaintiffs' counsel upon the impossibility of trying the case at law; and the question was whether—the account being all on one side—the fact that it was long and complicated was a ground for bringing it into equity. An injunction had been granted by the vice-chancellor, and his decision was appealed from. The lord chancellor, at the argument, said: "The only difficulty arises from the plaintiffs not referring to a case establishing their equity on the ground of the long and complicated nature of the charge [being all on one side]. The difficulty is the same, and the impossibility of obtaining justice at law, though the account is not mutual." Then, after consideration, he said: "I have no doubt that justice cannot be done in this case in a court of law. Directly it should be called on it would be sent to a

reference; and there can be no question that a reference to the master, with the power of appeal, is better than a *nisi prius* reference."

There was there no dispute about the payments made on account. The whole dispute was the propriety of the solicitor's charges for services, consisting, of course, of a great number of items, as all such charges do in England. The only difficulty was that the number of issues raised was so great that a jury could not carry them in their minds and deal with them in the jury-room.

A case somewhat similar to *O'Connor* v. *Spaight* is *Kennington* v. *Houghton, 2 Younge & Coll. C. C. 619,* decided by Vice-Chancellor Knight-Bruce in 1843.

Then we have the case of *Taff Vale Railway Co.* v. *Nixon, 1 H. L. 111 (1847)*. That was a bill filed by a contractor against a railway company to take an account of the work done by him for the company. The jurisdiction of the court was seriously and ably disputed, and Lord Cottenham, speaking for the law lords, quoted *O'Connor* v. *Spaight,* and said (at *p. 122*): "That, my lords, is the rule applicable to questions of this sort; and it is quite obvious, from the rule so laid down, that each case must be decided according to the peculiar circumstances belonging to it. It is, therefore, nothing to the purpose to show that there are cases where the court will not entertain jurisdiction, because it is a matter of law. Each case must be investigated, in order to see whether it comes within the rule laid down as that upon which a court of equity exercises its jurisdiction."

And Lord Campbell and Lord Brougham made some remarks which are noticeable. Lord Campbell says (at *p. 125*): "I have great satisfaction in doing so, because if there really had been any technical rule whereby a bill in equity could not have been filed in this case, it would have amounted to a very great defect. For if an action at law were the only remedy in such a case, it really would amount, in my opinion, to a denial of justice. I do not proceed merely upon the ground which is stated in the case as having been taken by his honor the vice-chancellor; I proceed upon this ground, that here is a complicated account that could not by possibility be taken by a jury.

The facts of the case, as stated by my noble and learned friend on the wool-sack, very clearly show that it would be a mere mockery to bring such an action before a jury. What would be done if such an action were brought at *nisi prius?* I know that within five minutes from the opening of the case by the leading counsel for the plaintiffs, the judge would say, 'If we sit here for a fortnight we cannot try this sort of a case, and therefore it is indispensably necessary for the sake of justice—not to save us from the trouble of trying the case, which we are perfectly willing to take, but for the sake of justice—that there should be a reference to an arbitrator, who will take accounts between the parties.' "

Then we have the case of *Southeastern Railway Co.* v. *Brogden, 3 McN. & G. 8 (1850).* That case resembled the present in that it was a suit by a railway company against the contractor, to enjoin an action at law founded on work done under two several contracts. The contractor answered, denying the jurisdiction, and his answer set out a schedule of the items which he claimed in his suit at law. The description of the contents of those schedules shows some similarity to Watters' bill of particulars in this case; and the court held that the schedules to his answer, which were merely items for work and labor done, showed such a complicated state of accounts that a court of law could not deal with them; and the lord chancellor, in delivering judgment, relied on *O'Connor* v. *Spaight,* and held the jurisdiction of the court. He uses this language (at *p. 23*) : "It appears that in certain cases and where the account is of such a nature as that it is thought that justice cannot be done at *nisi prius,* this court will withdraw the matter from law, and will take the exclusive conduct and decision of the case, although it is a subject of legal jurisdiction, and the demands on both sides are of a legal nature. In doing this, the court will either itself decide the matter, or, if it be matter of law, and fit for the decision of a court of law, will put it into such a shape as to make the decision practicable, where it is thought not to be so in the general form in which the claim may have been advanced," and then proceeds to an elaborate statement and discussion of *O'Connor* v. *Spaight.*

Another instructive case is *Northeastern Railway Co.* v. *Martin,* decided by Lord Cottenham in 1848, reported in *2 Phil. 758.* At *p. 762* Lord Cottenham says: "The jurisdiction in matters of account is not exercised, as it is in many other cases, to prevent injustice which would arise from the exercise of a purely legal right, or to enforce justice in cases in which courts of law cannot afford it; but the jurisdiction is concurrent with that of the courts of law, and is adopted because, in certain cases, it has better means of ascertaining the rights of parties. It is, therefore, impossible, with precision, to lay down rules or establish definitions as to the cases in which it may be proper for this court to exercise this jurisdiction. The infinitely varied transactions of mankind would be found continually to baffle such rules and to escape from such definitions. It is, therefore, necessary for this court to reserve to itself a large discretion, in the exercise of which due regard must be had, not only to the nature of the case, but to the conduct of the parties."

Another case is *Scott* v. *Corporation of Liverpool, 5 Jur.* (*N. S.*) *105; 28 L. J. Ch. 230,* dealt with by Lord Chelmsford. There a contractor who had failed to perform his contract, and who had been discharged and his contract declared forfeited by the corporation, filed his bill to obtain payment for the work he had done, and based his right upon the authority of the other cases already cited. His lordship said: "I do not think, therefore, that the mere fact of the accounts being capable of settlement and adjustment in a court of law would have prevented the plaintiffs being entitled to an account if there were no other objection in their way."

The next case is *Croskey* v. *European and American Steam Shipping Co.,* reported in *6 Jur.* (*N. S.*) *1190,* decided by Vice-Chancellor Wood (afterwards Lord Hatherley) in 1860, after the passage of the Common Law Procedure act of 1854 giving courts of law power to refer causes involving accounts to referees. It was there held, after argument by distinguished counsel, that the jurisdiction of the court was not affected by the power to refer causes given by the Common Law Procedure act. The action was for an account and to restrain an action at law, and the injunction was granted. It was admitted that

Cranford *v.* Watters.

if the cause had proceeded to trial at law that it would have been a proper case for reference at *nisi prius;* and this seems to have been the ground for the injunction.

Another case is *Kimberley* v. *Dick, L. R. 13 Eq. 1,* decided by Lord Romilly in 1871, after elaborate argument. It was a suit in equity by a party who had contracted to build a house, and its object was to have an account taken of the value of the services, particularly for extra work done on the house. In that respect it is much like the present suit. Lord Romilly seems to have considered his judgment with care, and (at *p. 21*) he says: "Besides this, it appears to me that in various other matters the plaintiff is entitled to remuneration for which he has made claims which have not been allowed. It is too minute for me to go into the details, nor is it desirable that I should do so; but I feel, after an attentive perusal of the evidence and such examination as I am able to give to the plans, to the verbal promises made to the plaintiff, and to the expectations held out to him by Mr. White, that I should be inflicting undue injury upon the plaintiff if I were merely to dismiss his bill, and leave him to such remedy as he might have at law. At law, I am of opinion that the account would be too complicated to be taken in court; *that it would involve too many minute claims and counter-claims to be possible for it to be satisfactorily disposed of without a reference to arbitration.* I am of opinion that the court has jurisdiction to deal with this case, and that it is bound to do so."

Then there is the case of *Southampton Dock Co.* v. *Southampton Board,* decided in 1871, reported in *L. R. 11 Eq. Cas. 254.* There Sir James Bacon, in referring to the case of *Southeastern Railway Co.* v. *Brogden, 3 McN. & G. 8,* above cited, says that these cases "have established as a very plain principle that it is not in every case of account that this court will interfere to withdraw from the jurisdiction of a court of common law the subject-matter of dispute between the parties. They all, I think, establish this proposition, that where it is unquestionable that the court of law can do as full justice to the subject in dispute as can be done in this court, this court will not interfere. *If there can be any doubt about that, the plaintiff has a right, as*

*I conceive, to maintain his suit in this court."* And after going over the case, he enjoined the defendant from proceeding in the law court, and retained the jurisdiction of the court of chancery.

Two other cases worthy of notice are *Harrington* v. *Churchward, 29 L. J. Ch. 521,* and *Edwards-Wood* v. *Baldwin, 9 Jur. (N. S.) 1280.*

In this state the question has been considered on several occasions. In *Seymour* v. *Long Dock Co., 5 C. E. Gr. 396.* Mr. Justice Randolph, sitting as master (at *p. 407*), says: "The equitable jurisdiction of this court in matters of account is said to be concurrent with that of courts of law, and no precise rule can be laid down as to the cases in which it will be exercised. It is often adopted because, in many cases, a court of equity has better means of ascertaining the rights of the parties. The court reserves to itself a large discretion upon the subject, and often assumes or rejects the cognizance of such cases, as the circumstances of the particular case may render expedient. The whole machinery of courts of equity is better adapted for the purposes of an account than that of the courts of common law; and in many cases, as has been said, when accounts are complicated, it would be impossible for courts of law to do entire justice between the parties. Courts of equity, in cases of complex accounts, take cognizance sometimes from the very necessity of the case, and from the incompetency of a court of law, at *nisi prius,* to examine it with the necessary accuracy."

And then Mr. Justice Scudder, speaking for the court of errors and appeals, in *Crane* v. *Ely, 10 Stew. Eq. 564,* makes substantially the same remarks, holding, however, that the case then before the court was not such as to warrant the court in interfering with an action at law.

And then we have the opinion of Vice-Chancellor Reed, in *Bellingham* v. *Palmer,* before referred to. He there discusses the same questions and refers to some cases which I have already cited at length, and to the case of *Marvin* v. *Brooks, 94 N. Y. 71,* and what was said by Mr. Justice Finch in that cause; and I will add that a later New York case is *Uhlman* v. *New York Life Insurance Co., 109 N. Y. 421.* In *Marvin* v. *Brooks,* Mr. Justice Finch says: "That the necessity for a resort of equity

Cranford *v.* Watters.

is now very slight, if it can be said to exist at all, since a court of law can send to a referee a long account, too complicated for the handling of a jury, and furnishes, by the examination of the adverse witnesses before trial and the production and deposit of books and papers, almost as complete a means of discovery as can be furnished by a court of equity." That remark applies with great force to those jurisdictions where, when a cause is once sent by a common law court to a referee, it is finally taken from the cognizance of a jury. Such is the case in New York, and it may be in other states. It is not applicable in its full force to this state, or to the present situation, where the machinery of a reference has been resorted to and has expended its force, and, after all, has left the cause in such a situation that it must still be sent to a jury by the common law court. As before remarked, I think that if it were not for the fact that the parties may, under our practice, after the cause has run the gauntlet of the referee, demand a trial by jury, there would be little or no occasion for the intervention of a court of equity upon the single ground of complexity of accounts. And so it seems to me that the case comes back to where it would have stood if there had been no practice of the common law court of ordering a reference, and such a reference had not been had. And the question now is whether it is such a one as this court would, in that state of the law, withdraw from the jurisdiction of a court of law; and on that question I think the authorities establish the conclusion above stated, namely, the test is, *are the issues so numerous, and so distinct, and the evidence to sustain them so variant, technical and voluminous, that a jury is incompetent to intelligently deal with them and come to a just conclusion?"*

An examination of the several exceptions and the evidence bearing upon them leads me to the conclusion that it is the duty of the court to assume jurisdiction.

[Here follows an elaborate discussion of the facts and the conclusion that the referee had arrived at a just result, which is omitted by direction of the vice-chancellor.]