FIDELITY & DEPOSIT CO. OF MARYLAND v. FIDELITY TRUST CO. et al.

(Circuit Court, D. New Jersey. January 25, 1906.)

1. EQUITY—BILL—NECESSARY PARTIES.

Where the receivers of an insolvent insurance society assigned to complainant absolutely whatever rights the society or its receivers had against defendant depositaries of the society's funds arising out of embezzlements by the society's treasurer, neither the society nor its receivers were necessarily parties to a bill by complainant against such depositaries, though one of the receivers was entitled to one-quarter of whatever complainant collected on the assigned claims.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Assignments, §§ 214, 215; vol. 19, Cent. Dig. Equity, §§ 248–251.]

2. SAME—MULTIFARIOUSNESS.

Where the grounds of a suit in equity are in some respects identical or in some way connected, the bill joining causes of action against separate defendants will not be objectionable for multifariousness, though it also shows that one defendant is liable in a different way or to a different extent than the other.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, §§ 371–379.]

3. SAME.

In a suit against certain depositaries of the funds of an insolvent association, arising out of embezzlements by the association's treasurer, com-

plainant was interested in all of the alleged fraudulent transactions, all of which were of the same character and grew out of the treasurer's manipulation of the society's deposits with the two defendant depositaries. In some of the transactions it was alleged that both depositaries participated and were jointly liable, and it was further charged that the illegal matters were so interwoven that an accounting was necessary of all the different accounts of the society in both depositaries, and that defendants knowingly participated with the treasurer in the misappropriation of certain of the funds. *Held*, that the bill was not objectionable for multifariousness.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, §§ 348, 357, 371–379.]

4. SAME—ADEQUATE REMEDY AT LAW.

The bill was also not objectionable, in that complainant had an adequate remedy at law.

5. ASSIGNMENTS—RIGHTS OF ASSIGNEE—PRINCIPAL AND SURETY—CRIMINAL CONDUCT.

Complainant surety company, after paying its liability on the bond of the treasurer of an insurance society, arising out of the treasurer's embezzlement of the funds of the society, received an assignment from the society's receivers of all the rights of the receivers and the society against defendants, who were depositaries of the society's funds, under which assignments complainant sued to enforce a liability alleged to arise out of improper payments made by such depositaries. *Held*, that as complainant claimed under the assignments, and not as surety, it was no defense that the loss to the society was caused by the treasurer's criminal conduct for which complainant was liable as surety.

In Equity.   On demurrer of Essex County National Bank.

Gans & Haman and James E. Howell, for complainants.

John R. Hardin, for defendant Essex County Nat. Bank.

CROSS, District Judge.   The bill of complaint in this cause is filed by the Fidelity & Deposit Company of Maryland, against Fidelity Trust Company, the Essex County National Bank, and Anna J. Wilson, executrix of the last will of William B. Wilson, deceased, defendants, and prays for a discovery and an accounting, and for a decree that each of the defendants may be directed to pay to the complainant the amounts for which they may severally be found liable. There is also a prayer for general relief.   Among the facts set forth in the bill of complaint, which is somewhat voluminous, the more important as related to the demurrant, are these:   A beneficial order known as the "Supreme Council of the Order Chosen Friends" was incorporated under the laws of the state of Indiana some time prior to the year 1895.   This corporation did business in the states of Indiana, Maryland, and New Jersey.   On or about December, 1900, the corporation became insolvent, and a receiver was appointed of its assets by one of the courts of Indiana, and subsequently ancilliary proceedings were taken in the state of Maryland and New Jersey, by virtue of which proceedings receivers were also appointed in those states.   Before the insolvency of said corporation it transacted a large amount of business in the state of New Jersey, and in connection therewith had large deposits of money at various times with the defendants, the Fidelity Trust Company and Essex County National Bank.   William B. Wilson, now deceased, and whose executrix is a defendant, was

its supreme treasurer. The Order of Chosen Friends, in the conduct of its business, established various funds for which separate bank accounts were opened. One of the principal banks with which said order deposited its funds was the Essex County National Bank, and the funds there deposited went into and constituted what was known as the "relief fund," and the account was known as the "relief fund account," which account could only be drawn upon by check signed by the three principal officers of the order, to wit, the supreme councillor, the supreme treasurer, and the supreme recorder. Subsequently the order authorized the opening of an account with the Fidelity Trust Company (formerly the Fidelity Title & Deposit Company), which account was known as the "general fund account," and which was constituted by deposit from time to time of 10 per cent. of the moneys deposited in the Essex County National Bank and other banks to the account known as the "relief fund." Checks on the "general fund account" were also required to be signed by the three officers above named. In 1896 another bank account was opened with the Fidelity Trust Company, called the "special fund account." This account was designed to be made up of monthly payments of $400, taken from the "general fund account," by checks bearing the three signatures above mentioned, which fund was intended to pay the expense of the meetings of the supreme council of the order. Still another account was opened by Wilson with the Fidelity Trust Company in the name of William B. Wilson, supreme treasurer. In this last-mentioned account were deposited sums of money belonging to the order, and which the bill charges the Fidelity Trust Company knew belonged to it, and which it also knew could only be drawn out by checks signed by the three officials above named, but which moneys it is alleged as a matter of fact were drawn out by the consent of the Fidelity Trust Company by checks signed only by William B. Wilson, supreme treasurer. It is further alleged that Wilson deposited large amounts of properly drawn checks of the order, as also checks drawn by different persons, to this account, with the object of drawing them out upon his own check as supreme treasurer, for the purpose of abstracting and embezzling the same, and that large amounts of such funds were drawn out by him by checks signed, "William B. Wilson, Supreme Treasurer," and made payable to his own order, which checks were thereafter deposited by him in his personal account in the Essex County National Bank, and which were subsequently drawn out by him and used for his own purpose. The bill of complaint charges that said bank knew that these checks were in fact the funds of the order; that the supreme treasurer's account was an account of the order; that Wilson had no authority to draw on such account personally, or deposit such checks to his own personal account, but was bound to deposit them to the credit of the order; and that the bank also knew that funds of the order on deposit with any bank or trust company could only be lawfully drawn by the signature of the three officers as above stated. The bill then alleges that the Essex County National Bank and the Fidelity Trust Company, two of the defendants, participated with Wilson in the misappropriation

of the funds of the order to a large amount, and charges that they are jointly and severally liable to repay the same to the said order or its assigns. The bill also alleges that the demurrant, its officers, and directors had full and ample notice of the provisions, constitutions, and by-laws of the order, providing that none of its funds could be drawn out except by checks signed by the three officials above named, and, further, that they received from said order a written notice to the effect that no moneys belonging to the said order could be drawn from said bank except upon checks signed by said officials. Then follow somewhat similar allegations with reference to the knowledge possessed by the Fidelity Trust Company. The bill also states that the Maryland receivers of the insolvent Order of Chosen Friends brought suit against Wilson's surety, the complainant herein, in which suit a consent judgment was entered in a Maryland court for $23,000 and costs; that in a settlement agreement between the receivers and the surety company it was provided that the receivers of the order in the various jurisdictions should assign to the complainant herein whatever claims the Order of Chosen Friends had against the defendants herein; that such assignments were subsequently made and copies are appended to the bill; that the settlement of the suit was approved by the various courts appointing the receivers of the order, and that it is under and by virtue of those assignments that this suit has been instituted. No attempt has been made to give a summary of the entire bill, but only and briefly its main features in so far as they attempt to charge the bank and connect it with the accounts of Wilson and the trust company. It thus appears that the bill seeks to charge the Fidelity Trust Company with liability for moneys wrongfully misappropriated and paid out by Wilson, in addition to those for which it seeks to hold the trust company and the bank jointly. There is no allegation of wrongdoing upon the part of the officials of the bank with reference to the payments made from the only fund of the order deposited with it, to wit, the "relief fund." That the payments from this fund were all made regularly by three signature checks is admitted. The charge of joint liability of the two defendants just named consists according to the bill of complaint, in this: that the Fidelity Company, with knowledge that it had no right to do so, permitted Wilson to draw checks as supreme treasurer to his own order, which checks, after deposit in said bank to his personal account, it paid, while the liability of the bank is predicated upon the fact that it knew that these funds belonged to the Order of Chosen Friends, that they were being wrongfully drawn by the check of the supreme treasurer alone, and that with the knowledge it possessed it participated with the trust company and Wilson in the embezzlement of these funds; that is to say, that the negligence and wrongdoing of the trust company and of the bank, enabled Wilson to abstract for his own use the funds of the order. The Fidelity Trust Company has answered the bill of the complaint. The Essex County National Bank has demurred, and assigns several grounds therefor.

1. The first ground of demurrer is that the Supreme Council of the

Order of Chosen Friends and its receivers in the three states above referred to are necessary parties to the bill. I think this ground of demurrer is not well taken. The assignments made by the receivers to the complainant by direction of the several courts appointing the receivers are absolute on their face, and conveyed to the complainant whatever rights the Order of Chosen Friends or its receivers had in and to their claims against the defendants. The settlement agreement, it is true, provided that one-quarter of whatever amount should be recovered by the complainant in this suit or otherwise, from the defendants, should go to the receivers in Maryland, but that is merely an executory agreement creating a right in the receiver of the order in Maryland to demand and have of the complainant one-quarter of whatever it may collect or receive on account of the assigned claims. As said above, the assignments made in pursuance of the agreement of settlement are absolute on their face. The Maryland receiver of the order and the order itself are therefore not essential or necessary parties. They may be proper parties, but that is the utmost that can be claimed. In this connection, it may also be added that the parties are not citizens of this state or within this jurisdiction.

2. The chief ground of demurrer is that the bill is multifarious. As an abstract proposition, it is impossible to say in what multifariousness consists. Each bill of complaint must be tested in this respect by itself. No rule applicable to all cases can be laid down. Certain principles have been established, and the circumstances of each case must be tested as nearly as may be by them. A multiplicity of suits is to be avoided where possible, but at the same time independent parties should not be put to the expense and trouble of litigating matters in which they have no interest in common with other defendants. Where the grounds of the suit are, however, in some respects identical or in some way connected, this condition will obviate an objection on the ground of multifariousness, notwithstanding the bill may show that one defendant is liable in a different way or to a greater extent than another. In the case of Brown v. Guarantee Trust Safe Deposit Company, 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468, Justice Lamar, in speaking for the court (on page 412 of 128 U. S., page 130 of 9 Sup. Ct., 32 L. Ed. 468) says:

"The case against one defendant may be so entire as to be incapable of being prosecuted in several suits, and yet some other defendant may be a necessary party to some portion only of the case stated. In the latter case the objection of multifariousness cannot be allowed to prevail" citing cases. "It is not indispensable that all the parties should have an interest in all the matters contained in the suit. It will be sufficient if each party has an interest in some material matters involved, which are connected with the others"—citing cases.

This case has been frequently cited and followed in the federal courts. In the case of Illinois Central R. R. Co. v. Caffrey (C. C.) 128 Fed. 770, Thayer, J., says:

"A bill will not be held demurrable for multifariousness because a large number of persons having no connection with each other are joined as defendants, where the cause of action against each is the same, and the joinder will save a multiplicity of suits and promote the convenience of the court and of the parties."

In that case the bill, which was filed by a railroad company against several defendants, who were engaged in business separately as ticket brokers in an alleged unlawful sale of railroad tickets, was sustained. Judge Sanborn, speaking for the Eighth Circuit Court of Appeals, in Kelley et al. v. Boettcher, 85 Fed. 55, 64, 29 C. C. A. 14, 23, says:

"There is no fatal misjoinder of causes of actions in equity in any bill which presents a common point of litigation, the decision of which will affect the whole subject-matter, and will settle the rights of all the parties to the suit"—citing a large number of cases, among them Brown v. Safe Deposit Company, supra.

Again, in Curran et al. v. Campion et al., 85 Fed. 67, 29 C. C. A. 26, the same judge, sitting in the same Court of Appeals, in addition to what was just quoted from his opinion in Kelley v. Boettcher, says, on the matter of multifariousness:

"It is not indispensable that all the parties should have an interest in all the matters contained in the suit, but it is sufficient if each party has an interest in some material matter involved, which are connected with the others."

See, also, United States v. Flournoy Live Stock, etc., Company (C. C.) 69 Fed. 887, 890, 891.

In Jones v. Slauson et al. (C. C.) 33 Fed. 632, a bill had been filed by an assignee in bankruptcy to set aside three fraudulent conveyances made by the bankrupt to separate defendants. It was claimed that these conveyances were separate transactions. Judge Lacombe, on page 634 says:

"The propositions that a bill may be filed against several persons relative to matters of the same nature, forming a connected series of acts, all intended to defraud and injure the plaintiffs, and in which all the defendants were more or less concerned, though not jointly, in each act, and that unconnected parties may be joined in a suit where there is one issue in the case, have been affirmed and reaffirmed in the courts of this state, and that, too, in suits brought as this is, to reach property of a debtor conveyed in fraud of his creditors, in diverse ways, at different times, and to separate parties."

And he subsequently adds, "This is generally accepted as the practice in the federal courts"—citing cases. In the New York & New Haven Railroad Company v. Schuyler et al., 17 N. Y. 592, it appears that the president of the railroad had issued a large number of fraudulent certificates of its stock. In a suit for the surrender and cancellation of these by the company it was held that the different owners of the fraudulent stock, although they had not acted together in the matter, were proper defendants to the suit, and an objection on the ground of multifariousness was overruled. See, also, Norris v. Hassler (C. C.) 22 Fed. 401; Lehigh Valley R. R. Co. v. McFarlan, 31 N. J. Eq. 730, 758; Illinois Central R. R. Co. v. Caffrey et al. (C. C.) 128 Fed. 770.

It appears to me that under the principle established by these decisions this suit can be maintained against these defendants, and that the objection raised by the demurrant on the ground of multifariousness must be overruled. The complainant is interested in the alleged illegal transactions, and in all of them, and they are all of the same

character and grew out of the alleged fraud and embezzlement of the treasurer of the order by the manipulation of its deposits in and between the two corporate defendants. As to some of the matters involved, it is true the Fidelity Trust Company may be alone responsible, but as to others it is alleged that it and the demurrant participated in them, and that they are jointly liable therefor, and that their joint liability grew out of the same alleged unwarranted and improper use of illegal checks drawn by the treasurer of the order, and which were so drawn illegally and improperly by him to the knowledge of both the defendants, and which checks, drawn upon the Fidelity Trust Company and paid by it, were deposited by the treas-. urer in his own private account in the Essex County National Bank, and that the bank knew they were funds of the order which were being illegally drawn and appropriated by its treasurer to his own use. It is further substantially charged in the bill that these illegal matters are so interwoven that it is necessary that an account be taken of all the different accounts of the order in the trust company and in the bank, in order to ascertain the rights of the complainant in the premises not only, but also those of the defendants, as to each other, and the complainant, and that this is necessary because the embezzlement of Wilson, the treasurer, consisted in a system of transfers of funds of the order from one account to another, in the trust company and bank, and also of deposits from time to time made by Wilson of his own moneys, to the various accounts, by which his alleged defalcations were at times somewhat lessened. It is true that no conspiracy or confederacy is charged between the trust company, the bank, and Wilson, but it is charged that they knowingly participated with Wilson in the misappropriation of certain of the funds of the order, and that they are jointly liable for their repayment.

While the statements of the bill above referred to appear in it in different forms and at different places, they may, for the most part, be found collected in the thirty-second paragraph thereof, in the following language:

"That these deposits and transfers from one account to another were all made as a part of one fraudulent scheme of Wilson's to embezzle the funds of the order, and to avoid detection. That in this way parts of the money which it has been charged the defendants from time to time enabled said Wilson to misappropriate were thus returned to other accounts of the order. That, furthermore, in some few instances Wilson made deposits of funds of his own in different accounts of the order for the purpose of partially offsetting the funds thus misappropriated by him. That in these various ways the net loss of the Order of Chosen Friends by reason of Wilson's embezzlement was less than the total amount of the various sums for which it has hereinbefore been charged the defendant corporations were liable in the first instance. That in order to determine exactly the liability of each of the defendant corporations to the said Order of Chosen Friends, or its assigns, it will be necessary to state a full and complete account between the said order and said Wilson with reference to and including the dealings of said Wilson with all the various bank accounts of said order with the two corporation defendants so that said defendants may be held liable for all sums misappropriated by Wilson through their participation, and may be credited with funds thus misappropriated, but afterwards returned, so that their net liability may be fixed at the actual amount misappropriated through their participation and not returned."

These charges cannot be ignored, as they would have to be if the objection of multifariousness were sustained.

3. The next objection urged is that it appears by the bill of complaint that the complainant has a complete remedy at law against the demurrant as to the matter therein alleged. If we admit that the complainant has a remedy at law against the defendant as to said matters, such admission would not be fatal to the maintenance of this suit, since it must further appear that such remedy would be as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. I think enough has been shown in the preceding paragraph as to the nature of the transactions between these parties, complainant and defendants, to show that the accounts between them are complicated and intricate, sufficiently so at least to warrant the assertion that it would be well nigh impossible for a jury sitting in the ordinary way in a trial at law to remember, consider, and digest the necessary evidence relating thereto. It is not unreasonable to assume that the most patient, intelligent, and fair-minded jury would, under the circumstances, fail to do justice between the parties. Kirby v. Railroad Co., 120 U. S. 130, 134, 7 Sup. Ct. 430, 30 L. Ed. 569. There may be a legal remedy, and yet, if a more complete remedy can be had in equity, it is a sufficient ground for jurisdiction. Wylie v. Coxe, 15 How. 415, 419, 14 L. Ed. 753; McMullen Lumber Co. v. Strother (C. C. A.) 136 Fed. 295, 303, 304; Fechteler et al. v. Palm Bros. & Co., 133 Fed. 463, 66 C. C. A. 336; Fenno v. Primrose et al. (C. C.) 116 Fed. 49; Gunn v. Brinkley Car Works, 66 Fed. 382, 13 C. C. A. 529; Cranford v. Watters, 61 N. J. Eq. 284, 48 Atl. 316. In the last case mentioned many authorities are collected and ably and elaborately discussed by Vice Chancellor Pitney.

Applying the principles established by the cases referred to, I have no hesitancy in saying that the remedy at law open to the complainant is inadequate in this case. I do not believe that justice could be done between the parties in an action at law as adequately, certainly, or efficiently as by a proceeding in equity.. It seems to me that the bill can be satisfactorily and surely grounded upon the fact that an accounting is called for not only, but a complicated, accounting, and one in which discovery is necessary. Furthermore, an attempt is made by the bill to follow and recover trust funds which have been misappropriated, and to which the complainant claims to have an equitable title. It is charged that, so far as the fund kept to the account of Wilson as supreme treasurer is concerned, the complainant is seeking to follow the proceeds of an account which equitably belonged to the Order of Chosen Friends, but which was designated in the books of the bank as belonging to William B. Wilson, supreme treasurer. In such case the Supreme Court of the United States has held that there is no adequate remedy at law. In the case of the National Bank v. Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693, it appears that the agent of the life insurance company opened an account with the bank in his name as agent, in which account he deposited the funds of the insurance company. He afterwards incurred personal debts to the bank, which the bank deducted from the ac-

count kept by the debtor as agent. The insurance company filed a bill in equity to recover the amount of the agent's bank account without any allowance for the personal debt of the agent. The court said (on page 66):

"It is objected that the remedy of the complainant below, if any existed, is at law, and not in equity. But the contract created by the dealings in a bank account is between the depositor and bank alone, without reference to the beneficial ownership of the moneys deposited. No one can sue at law for a breach of that contract, except the parties to it. There was no privity created by it, even upon the facts of the present case, as we have found them, between the bank and the insurance company. The latter would not have been liable to the bank for an overdraft by Dillion, as was decided by this court in National Bank v. Insurance Company, 103 U. S. 783, 26 L. Ed. 459, and, conversely, for the balance due from the bank, no action at law upon the account could be maintained by the insurance company. But although the relation between the bank and its depositor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, to whom in equity does it beneficially belong? If the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account."

See, also, Union Stock Yards Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724.

4. What has already been said disposes, indirectly at least, of all the grounds of demurrer, except the sixth, seventh, and eighth, which are quite similar and may be considered together. They are based upon the theory that the loss to the Order of Chosen Friends was caused by the criminal acts of Wilson, for whom the complainant became liable as surety to the order, and the contention is that Wilson's surety ought not to be allowed to recover against the defendant bank for any loss growing out of Wilson's misconduct. A sufficient answer to this is that the complainant did not in any way participate in the treasurer's wrongdoing, nor was it a party thereto, or cognizant thereof, nor is it claiming through him. It is also set up that the plaintiff cannot enforce any claim which Wilson himself would have been barred from enforcing on account of his criminal conduct. Of course, neither Wilson himself nor any assignee of his would have any right of recovery against either of the defendants, but the complainant is not suing in Wilson's right. It does not claim through him, but through the Order of Chosen Friends. It appears to me that, if it were necessary, the surety in this case would undoubtedly be subrogated in equity to the rights of the Order of Chosen Friends, to the extent of its payment, but it is unnecessary to consider that question, since it holds by direct assignment all the rights of the order in the premises. It surely cannot be that, if the corporate defendants knowingly aided Wilson in illegally abstracting the moneys of the order, the order would not have its right of action against them. This being so, why should not the complainant have the same right of action by assignment from the order, regardless of how or why it acquired such assignment? The order had a clear right, it just as clearly assigned it to the complainant, and I see nothing in reason, or public policy, or otherwise, that estops or prohibits the complainant from asserting it in a court of equity.

The demurrer will be overruled, with costs.