GOLDEN CROSS MIN. & MILL. CO. et al. v. FREE GOLD MIN. CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   May 6, 1907.)

No. 1,401.

1. PARTIES—SUITS IN EQUITY—AGENTS OF PARTIES.

.Persons whose sole connection with the subject-matter of a suit is that they are agents for the person really interested are not necessary parties, where no relief is asked against them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Parties, § 41.]

2. VENDOR AND PURCHASER—SUIT TO FORECLOSE LIEN—PARTIES.

Complainant sold certain mining property, reserving a vendor's lien. Some two years later an agreement was made between complainant, the purchaser, and a third party, whereby the latter, which held a claim against a stockholder of complainant, was to receive payment in installments from the net proceeds of the mining property, the operation of which was placed in the hands of a board of five managers. The third party, in accordance with the agreement, released its claim against the stockholder. Held, that to a suit by complainants against the purchaser and such third party to foreclose its vendor's lien the managers were not indispensable parties, being merely the agents of the parties before the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, § 780.]

Appeal from the Circuit Court of the United States for the Southern District of California.

The appellant, the Golden Cross Mining & Milling Company, a corporation of the state of California, together with J. M. Elliott, trustee, filed a bill in equity against the Free Gold Mining Company, a corporation of the state of Nevada, which will in this opinion be designated the "Free Gold Company," and the appellee, the Credits Commutation Company, a corporation of the state of Iowa, to foreclose a vendor's lien for $1,000,000, which had been expressly reserved in a conveyance made on June 26, 1897, by the appellant to the Free Gold Company of certain mining claims, mills, and other property situate in San Diego county, state of California. The Free Gold Company made no appearance, and as against it the bill was taken pro confesso. The appellee demurred to the bill for want of equity and for defect of parties defendant. On the latter ground the demurrer was sustained, and, the complainant declining to amend, the bill was dismissed. The bill alleged in substance that on June 26, 1897, the appellant was the owner of the property described in the bill, subject to a trust deed which it had given to James Spiers and others to secure sundry indebtedness of the appellant, aggregating more than $200,-000, and on that day, for a consideration of $1,000,000, it sold and conveyed all of said property to the Free Gold Company; that no part of the purchase price was paid; that in the deed to the Free Gold Company the appellant expressly reserved to itself a lien upon the property so conveyed, to secure the payment of $1,000,000, the purchase price thereof; that at the same time an agreement was entered into between the appellant and the Free Gold Company providing for the manner in which said property was to be worked and managed by the latter, and for the application and disposition of the proceeds arising therefrom; that in this agreement reference was made to the conveyance above mentioned, and to the reservation of the lien, and it was recited that the Free Gold Company was advised that the trust deeds given to Spiers and others were invalid, that all or some of the claimed indebtedness was without right, and that litigation might be necessary to adjudicate the same; that the Free Gold Company covenanted to save the appellant harmless from said claims and indebtedness under said trust deed, and that it was agreed that nothing should be deducted from said sum of $1,000,000 by reason of said claims, and that as soon as the Free Gold Company should acquire possession of the property it would put into operation suitable machinery and appliances

for treating tailings and concentrates, and operate said mines during the whole of the time it should be in possession, and that it would perform all necessary assessment work on the claims, procure patents therefor, put said property in suitable condition for sale, and endeavor to sell the same or enough thereof to pay the appellant said sum of $1,000,000, and that it would dispose of the alleged indebtedness of the appellant by payment, compromise, or litigation, and apply 60 per cent. of the net proceeds of the mine to the payment and extinguishment of such indebtedness, and pay the remaining 40 per cent. of such net proceeds to the appellant until all of its said original indebtedness should be paid, thereafter to pay 60 per cent. of the net proceeds to the appellant, the remaining 40 per cent. to be retained by the Free Gold Company.

The bill further presented the following facts: On June 28, 1897, the Free Gold Company commenced an action in the superior court of San Diego county against James Spiers and others to quiet its title to the said property, and to have the trust deeds to Spiers and others declared invalid. On the application of the Free Gold Company, C. W. Pauley was appointed receiver to work and operate the mines. Prior to April 22, 1899, differences and disputes had arisen between the Free Gold Company and the appellant and some of its stockholders, resulting in suits and actions at law, which were then pending, and on that date, while the above-mentioned suit to quiet title was still pending, and Pauley the receiver was in possession of the property, an agreement was made to compromise the pending litigation and all controversies between the Free Gold Company, the appellant, and certain of its stockholders. In that agreement it was provided that Spiers and other trustees should, as soon as possible, reconvey the property to the Free Gold Company; that neither such deed nor any patents from the United States to said mines should in any manner affect the lien reserved to the appellant in the deed of June 26, 1897. Referring to that deed and to the agreement of the same date, the agreement of April 22, 1899, provided as follows: "The said deed of conveyance and the said contract are hereby ratified and confirmed, except in so far as the said contract and deed are herein qualified, modified or changed, and this contract is and shall be considered as supplemental to the said original contract." It was further provided that a board of managers, consisting of five members, was to have the complete management and control of the mining property and of the mining operations thereon, with powers which are in substance as follows: First, to employ all servants and employés in the management of the property and the conduct of the business; second, to direct and control the development of the mines and property; third, to receive and dispose of the products of the mines in the manner which is set forth below. Prior to the execution of that agreement, the appellee was asserting a claim for a considerable sum of money against Hedges, one of the stockholders of the appellant. An arrangement had been entered into between Hedges, the appellant, and the appellee, whereby the latter was to accept in satisfaction of its claim $85,000, to be paid out of the net profits of the working of the mine, $30,000 of which was to be paid out of the share of the appellant, and $55,000 out of the share of the Free Gold Company, in consideration of which the appellee was to release its claim against Hedges. The terms of this arrangement were embodied in the agreement of April 22, 1899, on the expressed condition that the appellee should release its claim against Hedges. The appellee subsequently assented to the agreement and released Hedges. The agreement of April 22, 1899, provided that until the sum of $1,000,000 and interest was paid to the appellant, and $85,000 to the appellee, out of the net profits of the property there should be paid by the board of managers 25 per cent. of 68 per cent. to the appellee until $30,000 was paid, and thereafter $1,500 per month from the 25 per cent. of the Free Gold Company until the further sum of $55,000 should be paid to the appellee, and that in the event of the sale of said property 68 per cent. of any moneys coming to the appellant therefrom should be applied to the payment of said $30,000, and that all money coming to the Free Gold Company not payable to the appellant should be applied to the payment of any remaining balance of the $55,000 payable to the appellee. In the agreement it was further stipulated that the time when the appellant's lien should be enforced by a suit of foreclosure should be six years from June 1, 1899.

In a supplemental agreement it was provided that no change in the ownership or possession of the property, whether effected by private sale or judicial decree and public sale or otherwise, should affect the rights of the appellee as set forth in said contract, but that the property should pass burdened with the paramount lien and obligation of working said mines by the agencies provided in said contract, with the obligation to apply the proceeds as therein set forth until the appellee should be paid in full.

The bill further alleged that the lien of the appellee was subsequent and subject to that of the appellant, and that no part of the appellant's vendor's lien had been paid.

John S. Chapman, James A. Gibson, and William J. Hunsaker, for appellants.

Frank M. Porter and Shirley C. Ward, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellant sold its mining properties to the Free Gold Mining Company, reserving a vendor's lien for the purchase price. Some two years later, an agreement was entered into between the appellant, together with certain of its stockholders, and the Free Gold Mining Company, whereby the claim of the appellee against one of the stockholders of the appellant was made a charge upon the proceeds of the operation of said properties, and the operation was placed in the hands of a board of five men, called a board of managers, who were given authority to devote a portion of the net proceeds to the payment of the appellee's claim until it was discharged. The appellee, by subsequently assenting to this agreement became entitled to the benefits thereof. The appellant brought this suit to foreclose its vendor's lien, and the question presented on the appeal is whether the members of the board of managers are indispensable parties to the suit.

The rule as to who are indispensable parties is stated in Bates on Federal Equity Procedure, § 39, in which it is said:

"Although no inflexible rule for all cases has been formulated, yet the authorities have stated a general rule, which, notwithstanding its many exceptions and limitations, is of incalculable practical value in the preparation of bills and the administration of equitable remedies. Lord Hardwicke has stated the rule thus: That all persons ought to be made parties before the court who are necessary to make the determination complete and to quiet the question. Lord Redesdale, who is called the father of equity pleading, has stated the rule as follows: It is the constant aim of a court of equity to do complete justice by deciding upon and settling the rights of all persons interested in the subject of the suit, to make the performance of the order of the court perfectly safe to those who are compelled to obey it, and to prevent future litigation. For this purpose all persons materially interested in the subject ought generally to be parties to the suit, plaintiffs or defendants, however numerous they may be, so that the court may be able to do complete justice by deciding upon and settling the rights of all persons interested, and that the orders of the court may be safely executed by those who are compelled to obey them, and future litigation may be prevented."

We are unable to see that the managers are indispensable parties. They are not only not materially interested, but they have no interest whatever in the subject-matter of the suit. They have no title to or

lien upon the property which is the subject of the foreclosure. They are neither trustees nor beneficiaries under the contract. Their powers are not essentially different from those of a superintendent or manager placed in charge of mining property under the owner's instructions as to the disposition of the proceeds. They are not parties to the agreement under which they have operated the mines. They may be discharged at any time by the parties who placed them in control of the property, and they are free to quit the employment of those, parties whenever they see fit to do so. They derive their authority wholly from the parties who are before the court. They have no rights to be protected by the decree. They can have nothing to say as to the sale of the property or the disposition of the proceeds. Persons whose sole connection with the subject-matter of the suit is that they are agents for the person really interested are not necessary parties where no relief is asked against them. Story, Eq. Pl. 231; Woolstein v. Welch (C. C.) 42 Fed. 566; Garr v. Bright, 1 Barb. Ch. (N. Y.) 157. See, also, Fidelity & Deposit Co. v. Fidelity Trust Co. (C. C.) 143 Fed. 156; Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260; Jerome v. McCarter, 94 U. S. 736, 24 L. Ed. 136; and Smith v. Lee et al. (C. C.) 77 Fed. 779.

But it is contended that the only right which the appellee has in the property is the right to receive therefrom a certain proportion of the net proceeds of the operation thereof by the board of managers until its entire claim of $85,000 is paid, and that it is wholly useless to bring the appellee before the court unless the managers through whom its rights can be worked out and paid are also before the court to be bound by its decree. In answer to this it is only necessary to say that, if the court in its decree shall recognize the right of the appellee to have the operation of the mine continued by the managers until its claim is paid, it can only so decree in accordance with the terms of the contract. The court cannot add to the terms of the contract. The court will have no power by the decree to bind the managers, any more than they are now bound, to continue the operation of the mine. If their right and authority to continue such operation is recognized in the decree, it will be only because the parties to the suit have, by their contract, conferred such authority. The court can have no power to compel them to continue the work in which they are engaged. Nor, on the other hand, have they acquired any vested right to continue such work. They sustain no such relation to the property as to empower the court to impose duties upon them, or to decree any relief either for or against them. The most that the court can do in that regard is to recognize the existence of the contract, and to say that it shall be continued under the authority given by the parties thereto until the appellee is paid. To do this, it is not necessary to have the members of the board before the court. They have no standing to be heard as to the rights of the parties to the contract, and their presence is not necessary for the protection of the appellee's lien. If, on the other hand, on the final hearing, the court shall arrive at the conclusion that the rights of all the parties can be secured by a judicial sale of the property, released from the control of the board of managers, there are before the court all the parties necessary to enable

the court to decree such relief and provide for the disposition of the proceeds of the sale. The board of managers, if present in court, could not be heard to object to such a decree. We are of the opinion that the court below was in error in sustaining the demurrer and dismissing the bill.

The decree is reversed, and the cause is remanded for further proceedings not inconsistent with the foregoing opinion.