## Bell's Gap Railroad Company *versus* Christy.

1. Where a number of persons not incorporated but associated for a common object, intending to procure a charter, authorize acts to be done in furtherance of their object by one of their number, with the understanding that he should be compensated; if such acts were necessary to the organization and its objects and are accepted by the corporation and the benefits enjoyed, they must be taken *cum onere* and be compensated for.

2. In such case the promoters of the enterprise must be a majority of them. A minority could not bind the association or corporation.

May 18th 1875.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Blair county:* Of May Term 1875, No. 66.

This was an action of assumpsit, brought to the July Term 1873 of the court below, by Josiah M. Christy against The Bell's Gap Railroad Company.

The suit was brought to recover money expended by plaintiff in procuring the charter of the defendants, in payment of surveyors, &c., in making explorations and running the line of their road, &c., and also for his own services in the same matter; the whole occurred before the corporation came into existence, but plaintiff claimed that the defendants having accepted the results of his work, &c., they became liable to pay him.

The company was incorporated by virtue of the Act of May 11th 1871, Pamph. L. 737. This act appointed commissioners—amongst whom were John Brotherline and the plaintiff—to receive subscriptions and organize under the name of The Bell's Gap Railroad Company, to make a railroad of a gauge not exceeding three feet nine and a quarter inches, from the Pennsylvania Railroad, at Bell's Mills Station, to a point on the top of the mountain near Tub Spring, on a route recently surveyed by G. W. Dorner, thence to a point on Clearfield creek, near "Fallen Timber," not to exceed twenty miles in length, and from Tub Spring to Galitzen; the capital to be $100,000, in shares of $50 each.

By a supplement of March 29th 1872, Pamph. L. 700, the company were authorized to extend their road over the mountain

at Bell's coal bank, "instead of a route recently surveyed and laid out by G. W. Dorner." Inconsistent provisions in the original act were repealed.

The case was tried February 5th 1874, before Dean, P. J.

John Brotherline testified that about June 1870 the plaintiff and himself, upon consultation, determined upon an effort to construct a road up Bell's Gap; they got out handbills for the call of a meeting for the purpose, to be held at the St. Charles Hotel, Altoona, on the 2d of July 1870. A meeting was accordingly held, at which the plaintiff and witness were present; the plaintiff was chosen president of the meeting; one Lytle was appointed engineer to ascertain the practicability of a route, and the plaintiff was directed to attend to the matter, and have the survey made; the meeting was to organize a company in view of obtaining a charter; Lytle reported favorably of the route; witness prepared a bill; sent it to the legislature; it was passed in May 1871; witness and plaintiff gave notice of a meeting for the purpose of organizing the company; a meeting was called also by other commissioners, to be held previously to the time fixed by witness; it was held at Mr. Neff's office in Altoona, and all the stock was taken there, and the company (defendants) organized; they commenced shortly afterwards, and built the road; the meeting called by witness and plaintiff never was held.

On cross-examination witness said:

The bill which he prepared authorized the company to extend the road to Erie; being informed that the bill could not be passed in that shape, he prepared a second bill, by which the road should go to Tub Spring, Fallen Timber and Galitzen, and not to exceed twenty miles in length; this was passed. The first bill proposed a broad gauge road; there were also changes made in the commissioners by the second bill; witness and Christy could not get the law passed to suit their wishes.

Plaintiff testified as to the preliminary explorations, &c.; that Mr. Lytle's services were discontinued and Mr. Dorner was employed as engineer; witness then stated the routes explored by Mr. Dorner; that the surveying party was under plaintiff's charge; he was with them during the time they were making the survey, except a few days; paid most of the expenses, &c. A final location was made by Dorner, and a regular profile was made, showing that the difficulties of ascending the mountain could be overcome; there were other locations made afterwards, and the first locations were necessary to determine the propriety of the latter. Witness went frequently to Harrisburg about the charter, and incurred expenses there; also to New York to procure funds to make the road.

On cross-examination, he said that individuals, whom he named, at different times requested him to get up a company through Bell's Gap, to get to their timber; that witness expected to be paid for

his services; that at the meeting at Altoona on the 2d of July 1870, a board of directors was formed who authorized witness to go to New York, Washington and other cities to raise funds; when first making the survey the purpose was to get a road from Bell's Mills to Erie, and a bill for that purpose was the one he wished passed; his idea was that he could make money out of the road as a corporator, to hold a position in the company which would pay him; individuals whom he named and who were interested on the road told him they would see him remunerated for his services; he expected to be remunerated by the company by a salary for his services; the road was to be a broad gauge road.

Another witness testified that the company represented by the meeting of July 2d 1870, so far as they were there, two or three at a time, authorized plaintiff to go on with the business; it was the calculation to pay him, but nothing was said as to how he was to be paid. There was other evidence of similar character as to plantiff's services, and that Dorner's map was used by defendants.

Defendants gave evidence that the bill first sent to the legislature was for a broad gauge road from Bell's Mills to Erie; the impression at Harrisburg being that the road was in the interest of a New York corporation, there were objections to its being reported, and it was then ascertained that the bill was for a different purpose from that which the parties in the vicinity of Bell's Mills desired; the bill was then modified and was passed in the form before given; plaintiff did not make any efforts to get the last bill through; the termini in the original bill were Bell's Mills and Lake Erie. The meeting was held on the 18th of May 1871; the plaintiff had notice of it; a committee was appointed to open books for subscription to the stock at Mr. Neff's office, June 18th, at 1 o'clock; the meeting was advertised; the books were then opened and all the stock was subscribed. The road was made on the line mentioned in the supplement, not that in the original charter; Dorner's survey was not used; the object of the original proprietors of the road was to reach Bell's coal lands; the survey for the defendants was made by Mr. Ramsey. The stock was subscribed to a great extent by persons in the neighborhood of Bell's Mills. Dorner's map went into the hands of the defendants' engineer; none of the line of the constructed road was laid on Dorner's line; but his map was of service in the explorations. There was evidence also that the promoters of defendants' road never employed the plaintiff.

The defendants' third and fourth points, with their answers, were as follows:—

3. If Christy was not employed by the company as a company nor by any one on behalf of the company, or by any corporator or authorized agent of the corporation, but was employed, if at

[Bell's Gap Railroad Co. *v.* Christy.]

all, by individuals, his remedy, if he have any, is against such individuals, and not against the defendants.

Answer.   "We decline to instruct you as requested.   Plaintiff claims he was one of those engaged in the inception of the enterprise, who, having in view the chartering of a company to build this road, made preliminary surveys to ascertain whether it was practicable to build a road at that point; that such surveys were necessary, and that in and about them he performed onerous duties that the others did not share; that he did so in expectation of compensation, upon a promise of those or a majority of those acting with him, that he should be paid by the company thereafter to be organized; that when this company was organized it accepted and enjoyed the results of his work.   If the facts be as plaintiff claims, he can recover from these defendants."

4. The railroad for which Christy had the survey made was a broad gauge road with different termini, being from Bell's Mills to Lake Erie, being an entirely different route from that on which the Bell's Gap railroad is laid out and constructed, and is no benefit to defendants, and therefore plaintiff cannot recover.

Answer.   "This point assumes facts here disputed, which we have left for your determination, with proper instructions in our general charge, and for that reason we decline to affirm it."

The verdict was for the plaintiff for $843.70.

The defendants removed the record to the Supreme Court by writ of error.   They assigned a number of errors to the charge and to the answers to the defendants' points.   The third and fourth errors were the answers to the defendants' third and fourth points.

*D. J. Neff*, for plaintiff in error.—Plaintiff was president of the promoters, and as such could not hold the corporation liable; corporations are not liable to their officers on a *quantum meruit*: Kilpatrick *v.* Penrose Ferry Bridge, 13 Wright 118; Loan Association *v.* Stonemetz, 5 Casey 534.   Even if plaintiff's work had been accepted by the defendants, previous notice of his claim was essential to a recovery: Low *v.* Conn. & P. R. Railroad, 45 N. H. 375; 2 Greenl. on Ev., sect. 66.

*S. S. Blair*, for defendant in error.—Contracts with a company not organized, but in view of organization, are binding: Edinboro' Academy *v.* Robinson, 1 Wright 210; Erie & W. Plankroad Co. *v.* Brown, 1 Casey 156; Bedford Railroad *v.* Bowser, 12 Wright 29; Preston *v.* Liverpool, &c., Railroad, 7 Eng. Law & Eq. 124; Goodey *v.* Colchester & S. V. Railroad, 15 Id. 596; Edwards *v.* Grand Junction Railroad, 1 Myl. & Cr. 650.

Mr. Justice PAXSON delivered the opinion of the court, May 24th 1875.

This case lacks all the elements of a contract, either express or implied. The most that it amounts to is the expenditure by the plaintiff of a certain amount of his time and money in the furtherance of a scheme of constructing a railroad. He attended meetings ; visited Harrisburg for the purpose of obtaining a charter ; assisted in making a preliminary survey, and paid some of the expenses thereof. There was no contract with any one for the payment of his services, beyond the statement of some of the parties interested in the project that they would see him paid. All this was prior to the charter, or to any organization of the company. The road which the plaintiff had in view when he made the survey, as appears from his own testimony, was a broad gauge road, to run from Bell's Mills to Erie, and he evidently relied upon aid from New York capitalists to build it, with the expectation of retaining an important position in the company. He did not succeed in obtaining the required aid, and the road to Erie was never constructed or even commenced. Instead thereof, a short local narrow gauge road, called the Bell's Gap Railroad, was built, with the object in part to develop certain coal lands in the vicinity. The stock was principally taken in the neighborhood. The plaintiff, and others interested with him, were among those named as corporators in the act incorporating the company, but they failed to obtain the control of its organization. Subsequently, the plaintiff brought suit against the company to recover compensation for his services, as before stated, claiming that the company were bound by the promises of the original projectors of the enterprise, inasmuch as said company had accepted the result of his labors and enjoyed its benefits.

None of the cases cited by the defendant in error sustains his position. The Erie and Waterford Plankroad Company *v.* Brown, 1 Casey 156 ; and the Bedford Railroad Company *v.* Bowser, 12 Wright 29, were suits upon subscriptions to stock. The case of the Edinboro' Academy *v.* Robinson was a subscription in aid of an academy. There is not the slightest analogy between either of these cases and the one under consideration. In Burton *v.* The Liverpool, Manchester and New Castle-upon-Tyne Junction Railway Company, 7 Eng. Law & Eq. Rep. 124, the contract was between the plaintiff and an organized company. This was a case where the projectors agreed to pay the complainant 5000*l.* for the land to be taken for the railway and incidental damages, and the plaintiff thereupon assented that his land should be so taken. The agreement was in writing between the plaintiff and the executive directors of Lancashire and North Yorkshire Railway Company, which was afterwards united with another rival enterprise, under the name of the defendant corporation, and the two companies agreed to adopt the contract with the plaintiff. It is true the company had not yet obtained its charter, but it was still,

[Bell's Gap Railroad Co. *v.* Christy.]

an organization *in esse*, had a board of directors who assumed to make contracts binding upon the company when it should become thereafter fully clothed with corporate powers. In Low *v.* The Railroad Company, 45 N. H. (1 Hadley) 472, a charter had been obtained, and the services for which the suit was brought were rendered in promoting the organization of the company under the charter, procuring subscriptions to the capital stock, &c. It was held by the court in that case that, " where, after the charter and before the organization of a corporation, services are rendered which are necessary to complete that organization, and after it has been perfected, the corporation elects to take the benefit of such services, knowing that they were rendered with the understanding that compensation was to be made, it will be held liable to pay for the services upon the ground that it must take the burthen with the benefit; but that 'no promise to pay would be implied from the fact that such services were rendered at the request of any number of the corporators *less than a majority.*'"

We do not desire to controvert the principle, established in England, and to some extent recognised in this country, that when the projectors of a company enter into contracts in behalf of a body not existing at the time, but to be called into existence afterwards, then if the body for whom the projectors assumed to act does come into existence, it cannot take the benefit of the contract without performing that part of it which the projectors undertook that it should perform. Conceding to this principle its full force and effect, we are unable to see its application to the facts of this case. It may very well be that where a number of persons not incorporated are yet informally associated together in the pursuit of a common object, and with the intent to procure a charter in the furtherance of their design, they may authorize certain acts to be done by one or more of their number, with an understanding that compensation shall be made therefor by the company when fully formed. And if such acts are necessary to the organization and its objects, and are subsequently accepted by the company, and the benefits thereof enjoyed by them, they must take such benefits *cum onere*, and make compensation therefor. But the projectors or promoters of the enterprise within the meaning of the rule referred to, evidently must be a majority at least of such persons, and not one, two, or three, or a small minority thereof. Such minority can have no more authority to bind the association or corporation in its incipient or inchoate condition than they would have to bind it if fully organized. In this case the two or three persons who it is alleged promised the plaintiff to see him paid, bound no one but themselves. They had no authority to speak for any one else. In the absence of any such authority and of any satisfactory proof that the result of the plaintiff's labor and expenditures was accepted and enjoyed by the corporation, that it used

[Bell's Gap Railroad Co. *v.* Christy.]

the plaintiff's survey or located its road upon any considerable portion of the line thereof, the court below should have instructed the jury that the defendants were not liable.

It is to be observed that in all the cases which were brought to the attention of the court, the services were either performed after the charter had been obtained, and there was therefore an inchoate corporation, or there was an informal organization, as in the case cited in 7 Eng. Law & Eq. Rep., preparatory to obtaining a charter, and the employment was authorized by the organization as such, and was not the mere employment by individuals having no authority, express or implied, to contract for any one.

We think the court erred in their answer to the defendant's third point. Under all the evidence in the cause it should have been affirmed. There was, also, error in not affirming the defendant's fourth point. It appeared from the defendant's own testimony that the road for which he had made the survey was a broad gauge road with a different terminus, being from Bell's Mills to Erie, and was essentially a different route from that on which the Bell's Gap Railroad was laid out and constructed.

This covers the third and fourth assignments of error. The remaining assignments need not be discussed.

The judgment is reversed and a *venire facias de novo* awarded.