## NATIONAL BANK v. INSURANCE COMPANY.

Where, upon the undisputed facts of the case, the plaintiff is not entitled to recover, the court may instruct the jury to find a verdict for the defendant.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*Mr. George Bliss* for the plaintiff in error.
*Mr. Joseph Larocque, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The assignment of errors in this case presents the single question, whether on the undisputed facts the court below was right in directing a verdict in favor of the insurance company. The facts were as follows : —

John James Jackson was the agent at Baltimore of the Royal Insurance Company, a British corporation.   His appointment was in writing and filed in the office of the insurance commissioner of Maryland, in compliance with the laws of the State. His powers were ample for the issuing of policies, the collection of premiums, and the adjustment and payment of losses. No authority was given him, however, to borrow money on the credit of the company, and he had never in a single instance done so, except by the negotiation of bills drawn by him as agent on the company to pay losses.   He was at the same time the agent of other insurance companies and of a number of private persons.   He was introduced to the Central National Bank of Baltimore, in 1870 or 1871, as the agent of the Royal Insurance Company, and opened an account in the name of

J. J. Jackson, agent. The name of the insurance company did not appear. All his deposits were made to the credit of this account and all his checks were drawn against it. The account was a large one and included moneys which came into his hands from all sources. As he wanted money he checked on this account, signing the checks in the name of J. J. Jackson, agent. His remittances to the company were made by bills on London purchased from Alexander Brown & Sons, dealers in foreign exchange at Baltimore, with checks on the bank payable to that firm. This was known to and understood by the bank. His checks showed that very large sums of money credited to his account as agent were used in other ways than for the benefit of the company.

In the summer of 1873 he was behind in his accounts with the company, and a special agent was sent to Baltimore to get a settlement. For the convenience of adjustment the accounts were divided into three classes, and each class examined separately. On the 9th of July, upon a statement of one part of the account as classified, a balance of $12,572.52 was found due from him to the company. He had at the time not more than five or six thousand dollars to his credit in bank, and to meet this payment asked permission of the president of the bank to overdraw his account, saying that his agents were behind in their remittances, but he would hurry them up and soon make the deficit good. Getting the consent of the bank, he made his check in favor of Alexander Brown & Sons for the amount due from him, and bought a bill on London, which was remitted the company, and afterwards paid by the drawees in the ordinary course of business.

On the 19th of July, upon the completion of the adjustment of another part of the account, a further amount was found due from Jackson to the company of $5,520.48. He then drew another check in favor of Alexander Brown & Sons for this amount, and asked again for permission to overdraw, at the same time showing the check. After a repetition of substantially the same statements he had made on the former occasion, this check was certified by the direction of the president and handed back to him. He took it to Brown & Sons and bought another bill, which was sent forward to the company and paid

in London. Before the remainder of his accounts were adjusted he left Baltimore, and his agency was revoked on the 24th or the 25th of July. The bank then called on the company to repay the overdraft, claiming that the money advanced was in fact a loan to the company. The company declined to recognize any liability, and this suit was brought to recover the balance that was due as for money loaned.

These facts are undisputed, and we think it clear, if the jury had been permitted to pass on the evidence, and had found against the company, their verdict should have been promptly set aside by the court. In point of fact the money was borrowed by Jackson to pay what he owed the company. His application was not made in the name of the company, and although his account was kept in his name as agent, it was, in reality, his individual account and not that of the company. That the money was borrowed to remit to the company must have been understood by the bank. The checks were in the form that had been used for a long time in making such remittances, and when money had been borrowed before to pay losses, it had always been done on the bills of Jackson drawn on the company in London. The form, then, which the transaction assumed, as claimed by the bank, is that of an application by a large foreign insurance company, through one of its agents in this country, for the privilege of overdrawing its bank account at the agency, so that funds might be remitted to the home office abroad a few days in advance of anticipated receipts from current business. So unusual and improbable a thing as this can hardly be presumed from the single fact that the agent of the company, who was also agent of other parties, saw fit to keep his bank account in his name as agent without indicating for whom. The natural inference, from the facts presented to the bank, certainly is, as the truth was, that the agent wanted the accommodation to enable him to meet his own obligations to the company in anticipation of the remittances of his subagents. Such a borrowing does not charge the company as a borrower. True, the company has saved what the bank has lost, but not in a way to make itself liable to restore what it has got. The bank trusted the agent, not the company. No other reasonable construction can be put on the acts of the parties at the

time. A borrowing by an insurance agent to enable him to remit to his company the proceeds of his business is *prima facie* the borrowing of the agent himself rather than the company, and will be so treated unless the contrary is shown. Any other rule would be dangerous in the extreme. There is here no question of ratification. This can only arise where the borrowing is by the agent for the company without authority, and the company adopts by its acts what was done by the agent. Here the borrowing was by the agent for himself and not the company. It was clearly right, therefore, for the court to tell the jury, in advance of the verdict, that upon the evidence they must find for the company. *Pleasants* v. *Fant*, 22 Wall. 116.

*Judgment affirmed.*