No. 3965

Second Circuit

(Second Division)

D. T. & A. T. LEE v. FIRST NATL. BANK OF MINDEN

(January 14, 1932. Opinion and Decree.)

John T. Campbell, of Minden, attorney for plaintiff, appellee.

A. S. Drew, of Minden, attorney for defendant, appellant.

TALIAFERRO, J. D. T. & A. T. Lee, alleging itself to be a commercial copartnership, composed of Dawson T. Lee and Allen T. Lee, residents of Webster parish, La., instituted this suit against defendant, First National Bank of Minden, La., to recover $394.91, which was to the credit of the checking account of D. T. Lee on December 18, 1929, and which was on that date, it is alleged, illegally, and without authority of said partnership or of either of its members, applied by said bank as a credit on a note of another person held by it, on which said D. T. Lee was an indorser, thereby balancing and closing said checking account.

It is further alleged that while said checking account was in the name of D. T. Lee, yet it was in reality the account of said partnership and the deposits credited thereon were derived from its mercantile

business and belonged to it. It is also alleged that demand had been made on defendant to restore to said account the amount charged out, herein sued for, but this was declined.

Defendant filed an exception of no cause of action which was overruled. It is not urged in this court.

In its answer, defendant denies the existence of the alleged partnership between the two Lees and denies notice or knowledge that the account on its books in name of D. T. Lee belonged to said partnership, if it did exist. Defendant admits charging out the balance to the credit of the D. T. Lee checking account on December 18, 1929, and crediting same on a note of one of its customers whereon D. T. Lee was indorser and bound in solido, but avers that it had the legal right to do so as said note was long past due; that if said account belonged to plaintiff partnership, which is denied, it is estopped to claim ownership thereof as against defendant.

The lower court gave judgment for plaintiff. Defendant has appealed.

In oral argument, counsel for defendant conceded that defendant was without legal right, in the absence of express authority from D. T. Lee, to charge the account in his name with balance thereon, and credit same on a note on which he was indorser. It is also conceded that no such authority was given defendant. In the absence of express definite mandate to that effect, a bank is without power to arbitrarily compensate, as against a note held by it, the amount due a depositor (maker or indorser of said note) on checking account. This principle has been repeatedly announced by the courts. Hancock v. Citizens' Bank, 32 La. Ann. 590; Succession of Gragard v. Metropolitan Bank, 106 La. 298, 30 So. 885; Merchants' & Farmers' Bank & Trust Co. v. Hammond Motors Co., 164 La. 57, 113 So. 763; Thomas v. Marine Bank & Trust Co., 156 La. 941, 101 So. 315.

Two questions remain for decision: Was there a partnership between, and composed of, the two Lees; and, if so, did the account carried in name of D. T. Lee with defendant bank belong to, and was it in fact the account of, the alleged co-partnership, and recoverable by it?

The evidence leaves little or no doubt in our minds that there was a commercial co-partnership between the two Lees, which had existed for over three years. They erected a store building and carried a stock of groceries therein, together with gasoline and car parts, and retailed these commodities to the purchasing public. They were equal owners in the business and adopted the trade-name and firm style "D. T. & A. T. Lee." Article 2825, Civ. Code. It is quite certain creditors of this firm would have experienced no difficulty in holding the individual members responsible as commercial partners. They held themselves out to the world as a partnership, and therefore could not be heard to gainsay that a partnership between them existed.

It appears that these two brothers had been closely associated since youth, and that they regarded each other with a fondness and attachment rarely exhibited by brothers. What belonged to one belonged to both. They worked together and pooled the fruit of their joint industry. However, their relation as commercial partners did not arise until they engaged in the mercantile business some three or four years before this suit was filed.

It also appears that A. T. Lee carried an account with defendant until April, 1925; from which time it was practically closed; there remaining only a few cents balance to his credit. This was before the formation of the partnership by the Lees. It also appears that D. T. Lee opened an account with defendant in October, 1917, which continued until December, 1929. After the partnership came into existence, any funds acquired by either of the Lees, individually, and by the co-partnership, were invariably deposited to the credit of the D. T. Lee account. This account was subject to the check of both Lees and of the partnership. However, it does not appear that A. T. Lee checked against it individually, but all of the checks issued by the partnership were drawn by him. The record contains a multitude of canceled checks drawn and signed, viz., "D. T. & A. T. Lee by A. T. Lee," which were honored by defendant and charged against the D. T. Lee account. This course of business extended back for a considerable length of time; possibly over the entire period of the partnership's existence.

Mr. Wylie, defendant's cashier, testified in the case, but no other officer or employee of the bank did so. He stated that he had no knowledge of the existence of a partnership between the Lees, but admitted he had been to their store and saw them both working in it; that they used a rubber stamp in signing the firm name on checks, drawing and indorsing; that A. T. Lee made most of the deposits to the credit of the D. T. Lee account, the last two of which were made in December, 1929, and amounted to $412.41. A deposit of $307.84 was made to the credit of this account on December 14, 1929, the deposit slip containing these words: "List...... $307.84." A deposit of $104.57 made December 17, 1929, reads the same way. The word "list" on these slips refers to a number of checks making up the total of each deposit, as no currency, gold, or silver entered into the aggregates. These deposits were made by A. T. Lee.

The Lees testified that they had requested the bank officers or employees to change the D. T. Lee account to the partnership name, but this had not been done. Mr. Wylie denies having been requested to do this. Both the Lees testified that the deposits made on the account consisted of partnership funds, and the evidence as a whole convinces us that this is true. The fact that these brothers were generally known to be closely associated in business for many years, and had erected a store building, bought and sold groceries, gasoline, car parts, etc., in and about this building, that they both worked therein and used a firm name on their checks and otherwise, should have been convincing evidence to those with whom they dealt that the partnership did exist, and should have convinced the bank that the funds deposited with it in the D. T. Lee account were partnership funds.

In a letter dated December 21, 1929, signed by D. T. Lee and addressed to the defendant, demand is made that the amount charged out of the D. T. Lee account be reinstated to that account. In this letter, the account is referred to as belonging to the writer of the letter. Counsel of defendant argues that this is proof that this account belonged to D. T. Lee and that the partnership, if any existed, had no interest in it and cannot now be heard to assert title to it. Under the circumstances existing at the time, we can readily understand why this letter was couched in the language contained in it. But, if this account was in reality the account of the partnership, and defendant should have known that it was, the part-

nership, as a legal entity, was not estopped to assert ownership of it, regardless of any commitment made by either partner indicative of the contrary.

After defendant had closed the D. T. Lee account by charging out the balance therein, as herein mentioned, it filed suit against D. T. Lee and others on the note indorsed by him, and which had been credited with the $394.91 herein involved. Judgment was rendered in that suit on January 24, 1930, while the present suit was filed January 7th, prior. It can readily be seen that if defendant should succeed in the case at bar the entire amount charged out of the Lee account will continue as a credit on the obligation he indorsed; but if this account is decreed to belong to the partnership, only one-half of the amount may be so applied.

There is abundant authority sustaining the doctrine that cash money, or its representatives, belonging to one person, does not entirely lose its character by being deposited in bank to the credit of another; and the equitable owner may invoke the court's aid to have himself decreed the legal owner of the deposit and have it restored to him. Especially is this true where such a transaction is not tainted with fraudulent motives or purposes, and is in good faith, and where no one has been induced thereby to part with anything of value, or act to his detriment on that account.

In Union Stock Yards Nat. Bank v. Gillespie, 137 U. S. 411, 11 S. Ct. 118, 34 L. Ed. 724, it was held:

"Where the title to moneys deposited in a bank is equitable rather than legal, the owner of the equitable title may maintain a suit in equity against the bank to enforce his equitable right to the moneys; his remedy is not one at law."

And in Central National Bank v. Royal Insurance Co., 103 U. S. 783, 26 L. Ed. 459, it was held that if the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account.

Since this appeal was lodged, A. T. Lee died. His widow, Mrs. Edith Shaw Lee, individually and in her capacity as natural tutrix of her minor children, issue of her marriage to the deceased, was made a party to the suit by motion filed. The interest of the deceased in the judgment appealed from devolved upon his widow and heirs at his death.

It is therefore, for the reasons herein assigned, ordered, adjudged, and decreed that the judgment appealed from be affirmed, with costs.

DREW, J., recused.